**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

TODD MARROLLO,

                    Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

1:19-cv-14106-NLH

**OPINION**

---

**APPEARANCES:**

JAMES LANGTON
LANGTON & ALTER, ESQS.
1600 ST. GEORGES AVENUE
PO BOX 1798
RAHWAY, NJ 07065

    *On behalf of Plaintiff*

MATTHEW JARED LITTMAN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section
205(g) of the Social Security Act, as amended, 42 U.S.C. §
405(g), regarding Plaintiff's application for Disability
Insurance Benefits ("DIB")[1] and Supplemental Security Income

---

[1] DIB is a program under the Social Security Act to provide

("SSI")[2] under Title II and Title XVI of the Social Security Act.[3]  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled as of August 9, 2012.  For the reasons stated below, this Court will affirm that decision.

I.    BACKGROUND AND PROCEDURAL HISTORY

On June 13, 2014, Plaintiff, Todd Marrollo, protectively filed[4] an application for DIB and SSI alleging that he became

_____

disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[2] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[3] The standard for determining whether a claimant is disabled is the same for both DIB and SSI.  See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945).  The Court will provide citations only to the DIB regulations.  See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

[4] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file

disabled as of August 9, 2012.[5]  Plaintiff claims that he can no longer work as an engineer because he claims he suffers from affective disorder, anxiety disorder, hearing loss, varicose veins, clavicle/metatarsal fracture, and obsessive compulsive disorder.

After Plaintiff's claim was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on August 23, 2017.  On September 29, 2017, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on March 15, 2018, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

---

for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

[5] Even though Plaintiff contends that his onset date of disability is August 9, 2012, the relevant period for Plaintiff's SSI claim begins with his June 13, 2014 application date, through the date of the ALJ's decision on September 29, 2017.  See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which he or she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he or she satisfies the eligibility requirements, which cannot predate the date on which an application was filed). This difference between eligibility for SSI and DIB is not material to the Court's analysis of Plaintiff's appeal.

## II.  DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'"  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks

4

v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here
is no requirement that the ALJ discuss in its opinion every
tidbit of evidence included in the record," Hur v. Barnhart, 94
F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review,
a district court is not "empowered to weigh the evidence or
substitute its conclusions for those of the fact-finder."
Williams, 970 F.2d at 1182.  However, apart from the substantial
evidence inquiry, a reviewing court is entitled to satisfy
itself that the Commissioner arrived at his decision by
application of the proper legal standards.  Sykes, 228 F.3d at
262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);
Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

   **B.   Standard for DIB and SSI**

   The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if his physical or mental impairments are of such
severity that he is not only unable to perform his past relevant
work, but cannot, given his age, education, and work experience,

engage in any other type of substantial gainful work which
exists in the national economy, regardless of whether such work
exists in the immediate area in which he lives, or whether a
specific job vacancy exists for him, or whether he would be
hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

The Commissioner has promulgated regulations[6] for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step
process is summarized as follows:

1.   If the claimant currently is engaged in substantial
     gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe
     impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed
     impairment in 20 C.F.R. Part 404, Subpart P, Appendix
     1 and has lasted or is expected to last for a
     continuous period of at least twelve months, the
     claimant will be found "disabled."

4.   If the claimant can still perform work he has done in
     the past ("past relevant work") despite the severe
     impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's
     ability to perform work ("residual functional
     capacity"), age, education, and past work experience
     to determine whether or not he is capable of
     performing other work which exists in the national
     economy.  If he is incapable, he will be found
     "disabled."  If he is capable, he will be found "not

---

[6] The regulations were amended for various provisions effective
March 27, 2017.  See 82 F.R. 5844.  The parties do not argue
that any of these amendments are relevant to Plaintiff's appeal.

disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.  Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's alleged impairments of affective disorder, anxiety disorder, hearing loss, varicose veins, clavicle/metatarsal fracture, and obsessive-compulsive disorder were not severe.  Because the ALJ found that Plaintiff did not suffer from any severe impairments,

8

the ALJ determined that Plaintiff was not disabled.

The ALJ found under "an alternative analysis" that "assuming the claimant were limited to simple, unskilled (SVP 1 or 2) work, with no public contact work and only occasional contact with supervisors and co-employees, the vocational expert testified that there would still be jobs in the national economy the claimant could perform.  The claimant could perform the jobs of hand packager (DOT 920.587-018, SVP 2 medium unskilled work, 175,000 jobs nationally) and laundry folder (DOT 369.687-018, SVP 2 light unskilled work, 387,000 jobs nationally)."  (R. at 22.)  Under this alternative analysis, the ALJ again concluded that Plaintiff was not disabled.

Plaintiff argues that the ALJ erred by not finding his mental impairments to be severe at step two.[7]  Plaintiff contends that the ALJ discounted without meaningful explanation the records of the medical providers that showed that Plaintiff's mental impairments met the low threshold for finding a severe impairment at step two.  Plaintiff further argues that the ALJ improperly focused on the reports of Plaintiff's mental stability, which is not a permissible standard for assessing mental impairments.  Plaintiff also argues that the ALJ's one-

---

[7] Plaintiff does not challenge the ALJ's determination that his hearing loss, varicose veins, and clavicle/metatarsal fracture were not severe impairments at step two.

paragraph alternative analysis is insufficient to meet the
substantial evidence standard.

The Court finds that the ALJ did not err at step two.  The
Court therefore does not need to consider the ALJ's alternative
analysis.  At step two, the ALJ has to "consider the medical
severity of a claimant's impairment(s)."  20 C.F.R. §
404.1520(a)(4)(ii).  The severe impairment "must have lasted or
must be expected to last for a continuous period of at least
twelve months."  20 C.F.R. § 404.1509.

In order to have a severe impairment, the impairment or
combination of impairments must significantly limit a person's
"physical or mental ability to do basic work activities."  20
C.F.R. § 404.1520(c).  Basic work activities are: (1) Physical
functions such as walking, standing, sitting, lifting, pushing,
pulling, reaching, carrying, or handling; (2) Capacities for
seeing, hearing, and speaking; (3) Understanding, carrying out,
and remembering simple instructions; (4) Use of judgment; (5)
Responding appropriately to supervision, co-workers and usual
work situations; and (6) Dealing with changes in a routine work
setting.  20 C.F.R. §404.1522.

"The severity test at step two is a *de minimis* screening
device to dispose of groundless claims."  McCrea v. Comm'r of
Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (citation omitted).
The Third Circuit has explained that "the burden placed on an

applicant at step two is not an exacting one," and although "the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" Id. (citing SSR 85-28) (other citations omitted). "Any doubt as to whether this showing has been made is to be resolved in favor of the applicant." Id. (citation omitted).

"[S]tep two is to be rarely utilized as basis for the denial of benefits . . . [and] its invocation is certain to raise a judicial eyebrow," but "the Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." Id. at 360-61.

This case demonstrates why step two exists in the regulatory scheme for social security disability claims. As noted twice by the ALJ, Plaintiff "admitted in the record that he wants disability so his lifestyle is not altered, and not because of significant mental health symptoms." (R. at 21, 22 citing Exhibit 19F.) This motivation was confirmed by other evidence in the record. (See R. at 506, where Plaintiff reported that his first goal of therapy was to "get disability"; R. at 650, where Plaintiff reported that he was "'fine' with his

life and fears working would interfere with his exercise program
that averages 5 hours per day"; R. at 650, where Plaintiff
stated that "he cannot 'cope' with the expectations of working,
and "he reports no desire to make any changes in himself or in
his lifestyle."; R. at 651, where Plaintiff presented to a
social worker with social security paperwork and asked staff to
fill it out, but they refused to state that he could not work,
and the social worker concluded, "Client reported that he enjoys
his life the way it is and reported that he could continue his
lifestyle if he was given social security.  No symptoms of
anxiety were verbalized or observed; minimal depressed symptoms
reported (low mood).").

Stating a desire to apply for and obtain disability
benefits is not by itself evidence that a claimant does not
suffer from a severe impairment.  If that were the case, no
claimant, who must affirmatively apply for disability benefits
with the intention to obtain them, would ever pass step two.
However, that sole intention coupled with little to no
limitations on a claimant's daily living activities or ability
to perform basic work activities, as with the Plaintiff here,
demonstrates the purpose of step two to weed out unmeritorious
claims.[8]

---

[8] Indeed, the Supreme Court has recognized that the "Secretary's
sequential evaluation process contribute[s] to the uniformity

The "lifestyle" that Plaintiff maintained and did not wish to be altered by working is as follows:

- Plaintiff exercised at the gym for six to seven hours per day (R. at 50, 63-64).

- Plaintiff lived independently, drove on his own car, and did his own shopping (R. at 44-45).

- Plaintiff spent the first couple of hours of the day doing household chores and then he went to the gym for a few hours, went for a bicycle ride, and then went on a 40-50 minute walk (R. at 342).

- Plaintiff prepared his own dinner, took care of his household needs, and then he watched some television and went to bed (R. at 342).

- Plaintiff reported that he prepared his own meals on a daily basis for about one hour per day and he cleaned, vacuumed, swept, did some minor repairs, mowed, raked, and did the laundry (R. at 343).

- Plaintiff went shopping for food and personal items three to four times per week (R. at 344).

---

and efficiency of disability determinations. . . .  The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

- Plaintiff was able to pay bills, handle a savings account, count change, and use a checkbook/money order (R. at 344).

- Plaintiff reported that he "prefer[ed] to be alone," but he also he went out for coffee with friends, visited his aunt and sister, attended family functions, and went to church three to four times per week (R. at 345).

Plaintiff's report of his daily living activities shows that he had no limitation in his ability to perform basic work activities due to his mental impairments.  This is further confirmed by the medical records, which show no more than mild limitations in the four areas of mental functioning required to be considered by an ALJ.[9]  See 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your [mental] limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic

---

[9] In considering a claimant's mental impairments, an ALJ is required to review paragraph B areas of mental functioning, which include: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  A marked limitation is where a claimant's functioning in an area independently, appropriately, effectively, and on a sustained basis is seriously limited.  An extreme limitation is where a claimant is not able to function in an area independently, appropriately, effectively, and on a sustained basis.

work activities."); see also Zaccaria v. Comm'r of Soc. Sec.,
267 F. App'x 159, 160 (3d Cir. 2008) (stating that a "slight
abnormality," as opposed to a "severe" impairment, only has a
minimal effect on these functions and "would not be expected to
interfere with the claimant's ability to work").

     The ALJ fully supported his findings with citation to the
medical evidence that any limitations in the four areas
presented as mild at most.  For understanding, remembering, and
applying information, the ALJ found that Plaintiff was able to
understand and respond appropriately during the hearing; a
consultative examination showed that Plaintiff exhibited above
average intelligence; Plaintiff's counselor found that Plaintiff
was "intelligent, insightful and articulate"; in July 2016,
Plaintiff showed intact memory; and in June 2017, the claimant
showed intact memory and baseline cognitive functioning.  (R. at
20.)

     For interacting with others, the ALJ noted that even though
Plaintiff testified that he would have trouble dealing with
others and being reliable at work and he had difficulty leaving
the house, in his function report, Plaintiff reported that he
visited his aunt and sister and attended family functions.  (R.
at 20.)  The ALJ further noted that in August 2012, Plaintiff
had an appropriate mood and affect; in July 2014, Plaintiff
showed an appropriate mood and affect; during his October 2014

consultative examination, Plaintiff denied suicidal ideation and
showed sound social judgment; in March 2015, Plaintiff was
hospitalized with increased anxiety and depression, but by June
2015, Plaintiff had an appropriate mood and affect and no
suicidal ideation; between July 2015 and January 2016, Plaintiff
had stable mental status examinations; in March 2017, Plaintiff
showed strong mood stability; in July 2017, Plaintiff reported
feeling ok, with no side effects from medication, and felt well-
rested; and Plaintiff's cousin reported that Plaintiff did not
seem to have any problem with authority figures and that he went
to church and the gym.  (Id.)

As for the third functional area of concentrating,
persisting, or maintaining pace, the ALJ found that Plaintiff
was able to concentrate and follow along with the hearing
testimony; in July 2014, Plaintiff was oriented times four,[10] and
showed normal attention span and concentration; during his
October 2014 consultative examination, Plaintiff showed intact
concentration; in June 2015, Plaintiff was oriented times four;
between July 2015 and January 2016, Plaintiff had stable mental
status examinations; in October 2016, Plaintiff was doing well
and had a normal mental status examination; in June 2017, the

_____

[10] During a mental status examination, a person is found to be
"oriented x4" if he is oriented to Person, Place, Time, and
Situation.  In addition to knowing his name, location, and time,
the person can explain why they are at the healthcare facility.

16

claimant showed intact attention and concentration.  (R. at 21.)

For the fourth area of functioning, the ALJ found that Plaintiff's daily living activities, as set forth above, demonstrated no more than a mild limitation in adapting or managing himself.  (R. at 21.)

The ALJ also squarely addressed record evidence that Plaintiff contends supports the severity of his mental impairments.  The ALJ listed records from examiners that found Plaintiff to have moderate to severe limitations in several of the four functional areas (R. at 21-22), but concluded that those opinions were contradicted by the stable mental status examinations and the claimant's self-report of stability (R. at 22).  The ALJ further found that these opinions did not address Plaintiff's statement that his reason for seeking disability was so that he did not have to "change his lifestyle."  (R. at 22.)  The ALJ therefore afforded their opinions little weight.[11]  (Id.)

Plaintiff argues, however, that "[a]ll of the recited medical evidence is utterly rejected because plaintiff's long-standing mental illnesses were, at various times, described as

---

[11] An ALJ is required to state what weight he ascribes to a medical opinion, but not to other forms of medical evidence.  20 C.F.R. §§ 404.1527(c), 416.927(c) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.").

'stable.'  Aside from the frankly obtuse assertion or belief
that the uncontradicted treating and examining opinions of
disability and the absolutely unanimous agreement that plaintiff
suffers 'severe' mental impairments can nevertheless be
outweighed by a few references to 'stability,' the law in this
Circuit frowns upon such convenient contrivances in the
evaluation of medical evidence."  (Docket No. 11 at 23.)

The Court recognizes that "stability does not equate to a
specific medical condition. Indeed, someone can be stable with a
chronic disabling malady or stable on a particular day or in a
certain environment."  Nazario v. Commissioner Social Security,
794 F. App'x 204, 211 (3d Cir. 2019).  The Court further
recognizes that a claimant's "stability" does not automatically
mean that the claimant can perform basic work activities.  See
Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000) ("Dr. Erro's
observations that Morales is 'stable and well controlled with
medication' during treatment does not support the medical
conclusion that Morales can return to work," because the
"relevant inquiry with regard to a disability determination is
whether the claimant's condition prevents him from engaging in
substantial gainful activity.").

The ALJ here, however, did not rely upon the stability of
Plaintiff's mental impairments in an impermissible way.  The ALJ
detailed the medical evidence which demonstrated only mild

18

limitations in the four functional areas, and well as
Plaintiff's self-reports of his daily activities and general
lifestyle, all of which supported the conclusion that Plaintiff
maintained the capacity to perform basic work activities on a
sustained basis.  In other words, the ALJ found that Plaintiff's
mental impairments had been, and continued to be, at a
consistent level - i.e., stable - which enabled him to engage in
substantial gainful activity.  This analysis readily meets the
ALJ's duty to support his decision with substantial evidence.
See Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (U.S. 2019)
(reiterating that the threshold for such evidentiary sufficiency
under the substantial evidence standard is not high, and it
"means - and means only - such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion"); Plummer
v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ may reject a
treating physician's opinion outright only on the basis of
contradictory medical evidence, but may afford a treating
physician's opinion more or less weight depending upon the
extent to which supporting explanations are provided."); see
also Colclasure v. Commissioner of Social Security, 2018 WL
6322616, at *5 (D.N.J. 2018) ("Plaintiff argues that the
stability of her pain syndrome does not automatically correlate
to non-disability - for example Plaintiff's pain could be
'stable' at a level that was totally disabling.  Granting that

19

general observation as true, the Court, however, does not view
the ALJ's reference to Plaintiff's pain syndrome being 'stable'
in the way Plaintiff interprets it." To the contrary, the ALJ
adequately explains in other parts of the decision how Dr.
Sharf's opinion as to Plaintiff's stability, and other medical
references to her level of pain, are consistent with, and do not
preclude, Plaintiff's ability to perform light, unskilled work,
and are not consistent, as Plaintiff contends, with a fixed
state of disabling pain.").

Plaintiff may disagree with the ALJ's assessment of the
record evidence and his conclusion that Plaintiff's mental
impairments were not severe, but that does not compel the
conclusion that the ALJ's finding at step two was not supported
by substantial evidence. See, e.g., Perkins v. Barnhart, 79 F.
App'x 512, 514-15 (3d Cir. 2003) ("Perkins's argument here
amounts to no more than a disagreement with the ALJ's decision,
which is soundly supported by substantial evidence."); Moody v.
Commissioner of Social Security Administration, 2016 WL 7424117,
at *8 (D.N.J. 2016) ("[M]ere disagreement with the weight the
ALJ placed on the opinion is not enough for remand."); Grille v.
Colvin, 2016 WL 6246775, at *8 (D.N.J. 2016) ("Distilled to its
essence, Plaintiff's argument here amounts to nothing more than
a mere disagreement with the ALJ's ultimate decision, which is
insufficient to overturn that decision.").

### III. Conclusion

This Court may not second guess the ALJ's conclusions but may only determine whether substantial evidence supports the ALJ's determinations.  Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  The Court finds that the ALJ's determination that Plaintiff was not totally disabled as of August 9, 2012 is supported by substantial evidence.  The decision of the ALJ will therefore be affirmed.

An accompanying Order will be issued.


Date: June 5, 2020                    s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.